STATE of Missouri ex rel. FORD MOTOR COMPANY, a corporation, Relator,

v.

Honorable Michael F. GODFREY, Judge of the Circuit Court of the City of St. Louis, Missouri, Division No. 9, Respondent.

No. 58358.

Supreme Court of Missouri, En Banc.

Feb. 11, 1974.

Robert C. Ely, Robertson, Ely & Wieland, St. Louis, for relator.

Robert L. Inman, Schurr & Inman, Clayton, for respondent.

DONNELLY, Chief Justice.

This is mandamus.

The facts of the case, as they appear in the majority opinion of the St. Louis District of the Court of Appeals, from which we transferred this case, are set forth below without quotation marks.

This proceeding arises out of an action for personal injuries filed by David A. Cryts and Rosalie Cryts, his wife, against Robert J. Uttendorfer, his wife, and the Ford Motor Company. MFA Mutual Insurance Company intervened.

The injuries to David Cryts were alleged to have been incurred on June 3, 1967, when the automobiles belonging to Cryts and Uttendorfer collided. The amended petition for injuries to David and loss of consortium by his wife alleged negligent operation by Uttendorfer, and negligent design of the Cryts' Ford automobile, which caused or contributed to cause the injuries to David Cryts.

Trial of the cause commenced May 8, 1972, before respondent and a jury. On May 11 the cause was submitted to the jury. Before arguments and the giving of the instructions respondent and all attorneys reviewed the instructions, including the verdict forms. Counsel agreed to the submission of eight different verdict forms, two of which would be used in returning a verdict. Following the instructions and arguments, the cause was submitted at approximately 3:00 p. m. on May 11, 1972. After a note was sent to respondent concerning some pictures and a trooper's report, and an inquiry concerning a personal matter relating to one juror, the jury was excused until the next morning.

On May 12, after the jury had been deliberating for about one and one-half

hours, the jury forwarded an unsigned note to respondent. The note read as follows:

"We the jury find no evidence that defendant Ford is in any way liable. Further we have reached a point whereby we cannot find, in face of the evidence, for or against the defendant Uttendorfer or for or against the plaintiff Cryts. How do we proceed?"

Respondent read this communication to the attorneys. Ford's attorney suggested to respondent that he direct the jury to write out their verdict in the form they desire it to be as to Ford, and also suggested that the jury advise the court regarding its ability to reach a verdict regarding Uttendorfer. ". . . I think the fact that they are hung as to one defendant does not bar them from finding a verdict that absolves the other defendant." Counsel for Cryts objected and argued that there must be a verdict "in the entire case."

Later respondent advised counsel that he would give a "hammer instruction." Counsel for Cryts objected but his objection was overruled. Counsel for relator Ford reserved the right to request respondent to accept a verdict in favor of Ford in the event the jury was unable to agree on a verdict regarding Uttendorfer. The jury was then returned to the court room. Respondent addressed the foreman and the following occurred:

"THE COURT: . . . Mr. Foreman, . . . tell me how you stand numerically as to a verdict on the forms that were submitted to you at the close of this case, . . .

THE FOREMAN: Seven and five, your Honor.

THE COURT: Now, let me ask you this further question: If given further time to deliberate this case do you feel that there would be a reasonable grounds [sic] for belief that this jury could come to a verdict in this case?

THE FOREMAN: In my judgment, your Honor, we could not.

THE COURT: Do you feel that under no set of circumstances that the Court might later do or now do that you could not reach a verdict?

THE FOREMAN: In my judgment we could not, your Honor."

Respondent then gave the "hammer instruction."

The jury returned at about noon. Then respondent indicated to counsel that if the jury had not arrived at a verdict by 1:00 p. m., and did not feel they could arrive at a verdict if given more time, he would declare a mistrial. Relator's counsel renewed his request to respondent to advise the jury to write out its verdict on the issue of Ford's responsibility, and enter an interlocutory judgment as to Ford to be held in abeyance until verdict and judgment were rendered as to Uttendorfer. While the attorneys and respondent were in conference the jury buzzed again and sent another note which read "We the jury still cannot find for or against either the defendant or the plaintiff." Respondent advised counsel for relator that he would not advise the jury in accordance with relator's request and stated "I think this has to be a full jury verdict and not a piece-meal jury verdict." Relator requested a poll. The jury was returned and respondent addressed the jurors:

"THE COURT: Ladies and gentlemen of the jury, I understand that you have not arrived at a verdict, is that correct?

JUROR NO. 9 . . . That's right."

Thereupon respondent declared a mistrial, and at relator's request, the jury was polled over the objection of counsel for Cryts. Respondent stated:

". . . . Now, I am going to have the clerk poll each individual juror to see if the statement, 'We the jury find

no evidence that defendant Ford is in any way liable' is, in fact, each individual juror's conclusion with reference to the evidence and the instructions of the Court in this case . . . "

The clerk asked each juror "Is the statement, 'We the jury find no evidence that defendant Ford is in any way liable' your statement?" Each juror replied that it was.

On May 23, 1972, relator moved to enter judgment in favor of Ford Motor Company based upon the "verdict" of the jury in view of the note and the poll. Relator also requested that the judgment be interlocutory and held in abeyance until the issues regarding Uttendorfer could be determined. After argument the motion was overruled. Relator sought mandamus in the St. Louis District of the Court of Appeals and an alternative writ issued.

In the companion case decided this date, State ex rel. Vogel v. Campbell, Mo., 505 S.W.2d 54, we considered the element of finality requisite for a verdict. Suffice it to say that a verdict implies that it is the final decision of the jury.

Under the facts in this case we cannot say that the jury intended its decision to be final. Counsel for the parties have not directed us to any decision, and our own research has failed to reveal any authority which holds that an unsigned note to the judge constitutes the final decision of the jury. Furthermore, during the whole process before a mistrial was declared, upon interrogation by respondent after the note was forwarded, the expressions of the jury indicate they had not come to a final decision in this case. Even after the giving of the hammer instruction, after which the jury continued its deliberations, the jury was asked by respondent "I understand that you have not arrived at a verdict, is that correct?", and Juror No. 9 answered "That's right." While it may be that these remarks were intended to apply to Uttendorfer, the facts remain that the trial court did not receive or accept anything as

the verdict. Under these facts, the expression of intent by the jury did not rise to the status of a verdict, and, for this reason above, the alternative writ must be quashed.

We transferred this case, and the Vogel case, in order to attempt to resolve the problem posed when a civil suit is brought against multiple defendants, the case goes to the jury, and the members of the jury, after deliberation, then indicate to the trial court that they have decided for (or against) one defendant but are unable to agree as to the other defendant or defendants.

In Schweickhardt v. City of St. Louis, 2 Mo.App. 571, 584 (1876), plaintiff sued to recover damages for injuries sustained as a result of falling into an excavation. The case was submitted to the jury against defendants, the City of St. Louis, Brown, Allen, Schneider, and Stone. The jury returned a verdict against the City of St. Louis, Brown, Allen and Schneider. Nothing was said in the verdict of Stone. The Court reversed and remanded for new trial and said:

" . . . It is far from being immaterial whether, when several are sued as jointly liable for a tort, there is a verdict in favor of one or more, while as to the rest the verdict and judgment are for the plaintiff. Moreover, as the several defendants, if jointly liable, are subject to contribution, those against whom the verdict is given are interested in having as many assistants in bearing the burden as possible. The jury here left it undetermined whether Stone was liable to any share of this burden. The court thereupon undertook to declare that he was not liable; and, without pausing to inquire whether such a judgment, if not reversed, would be a bar to an action for contribution, the other defendants are plainly damnified by being subjected to an execution, in advance of any determination of their relations to Stone, as to the amount they are thus compelled to pay."

The majority opinion (written by Simeone, J.) of the Court of Appeals, while recognizing apparent deviations from the Schweickhardt holding (e. g., Lavignon v. Dietzel, 34 S.W.2d 92 (Mo.1931); State ex rel. Cunningham v. Haid, 328 Mo. 208, 40 S.W.2d 1048 (1931); Newdiger v. Kansas City, 342 Mo. 252, 114 S.W.2d 1047 (1937)), concluded that none of those cases expressly repudiated the Schweickhardt decision, and held that a verdict which does not dispose of *all* parties may not be received. The opinion said:

"Relator urges that in this time of congested dockets, litigation delay and the tendency of modern courts to look at substance rather than being bound by form, a determination that the jury cannot render a verdict for one defendant without disposing of the other makes a mockery of the law. Relator urges that we should use this petition as 'a vehicle to tell the courts and the bar that substance holds sway over form.'

"But we are dealing with more than form. We are dealing with the substantive law of joint liability, with the preciseness and orderliness of the law relating to verdicts, judgments and appeals. We are dealing with the practical problems of expediting a complete disposition of a cause so that all issues and all parties may have their day in court and have the litigation terminated once for all. In the long run judicial haste may well result in judicial waste."

Judge McMillian filed a dissenting opinion, and stated his position as follows:

". . . I believe that reason and policy dictate that a jury may render a definite and clear verdict in favor of one defendant without disposing of the other defendant, and that it is wholly unfair to require the defendant who is found not liable by the jury to retry his cause only because the jury was unable to agree as to the other defendant. What possible substantive reason can there be for a formal rule which requires the jury to dispose of all parties defendant before the court can accept a verdict in favor of one? Following the general principle that all the parties and all the issues must be disposed of does not satisfy me. General rules do not solve specific cases."

Judge Smith filed a concurring opinion, and stated his position as follows:

"I concur, but wish to express my dissatisfaction with the present state of the law in precluding a court from accepting a verdict as to one party where the jury is unable to agree as to another party. I think it unfortunate that a litigant who has succeeded in convincing a jury of the validity of his position must convince another jury of the same thing simply because the other litigants can't convince the jury either way.

"The practical problems of the administration of justice may require such result. The problems are complicated by the many different ways in which they arise, the extent of third party and cross party pleadings, the needs for final judgments before appeal, the rights of contribution between joint tort-feasors, the restrictions that damages against joint tort-feasors be the same, and other considerations. But it appears to me a fruitful area for further study with a view toward possible revision of the rules to allow partial verdicts."

The position espoused by Judge McMillian is taken in criminal trials in Missouri and in the Federal courts. Rule 27.-01(b), V.A.M.R.; Fed.R.Crim.P. 31(b); United States v. Cotter, 60 F.2d 689 (2d Cir. 1932); and Com. v. Wood, 12 Mass. 313 (1815). Rule 27.01(b) reads as follows:

"(b) If there are two or more defendants the jury at any time during their deliberations may return a verdict or verdicts with respect to a defendant or defendants as to whom all of their number has agreed; if all of their number cannot agree with respect to all or any

of the defendants, those as to whom no agreement is reached may be tried by another jury. In every case where the jury fails to reach a unanimous verdict as to the guilt or innocence of a defendant, the court shall declare a mistrial as to such defendant, who may be tried by another jury."

We are of the opinion that the proposal to allow "partial verdicts" deserves the attention of the Bench and Bar. However, we share Judge Smith's reluctance to adopt any position by decision without having the benefit of an in-depth study and consideration of its possible side-effects. We believe a change, if there is to be one, should be by rule of this Court. We urge the appropriate committees of the Bar to study the matter and make recommendations to this Court. These recommendations will then be referred to our Committee on Rules and will then be considered by this Court.

The alternative writ heretofore issued by the St. Louis District of the Court of Appeals is ordered quashed.

SEILER, MORGAN, HOLMAN, BARDGETT and HENLEY, JJ., concur.

FINCH, J., concurs in result in separate concurring opinion filed.

FINCH, Judge (concurring in result).

I agree with the conclusion of the principal opinion that the expression of an intention by the jury with reference to defendant Ford Motor Company did not rise to the status of a verdict and that as a consequence the alternative writ of mandamus heretofore issued by the St. Louis District of the Missouri Court of Appeals should be quashed. However, it is my view that we cannot decide this case without resolving the issue of whether it is possible in a case such as this for the jury to return a verdict for or against one defendant and at the same time fail to agree on a verdict as to another defendant.

Necessarily, the first issue presented by this case is whether such a result is possible. If not, that ends the matter and there is no occasion to consider the sufficiency of the verdict. If, on the other hand, it is permissible to have a verdict for or against one defendant but a "hung jury" as to other defendants, it then becomes proper to consider and pass upon whether what occurred in this instance was sufficient to constitute a verdict in favor of Ford.

Put another way, appellate courts of Missouri consider and decide questions presented which are within the realm of the possible—actual rather than theoretical questions. For example, suit is brought and after service a defendant attacks the validity of that service and also pleads that the petition fails to state a cause of action. The threshold question is whether the defendant is even in court. Only after deciding that question in the affirmative would the court reach and decide whether a cause of action was stated. The court does not first take up and pass upon the question of whether the petition would be sufficient to state a cause of action if there were a defendant properly served and then, if that matter is decided in the affirmative, proceed to the question of whether the defendant is in court in the first place.

Another example would be a suit against the State of Missouri for injuries from a tort allegedly committed by a state employee. A court would not resolve the question of whether a cause of action was stated (or proved if evidence was heard) and then take up the question of whether the doctrine of governmental immunity relieves the defendant of liability. Rather, the court would resolve the latter question first and only reach the issue of whether a cause of action is stated or proved *if* the state can be liable for tort in the first place.

In this case, the threshold question presented is whether there is such a thing in civil cases as a valid verdict for or against one joint tort-feasor defendant

when that jury is unable to agree upon a verdict either for or against the other defendant or defendants. As the principal opinion points out, we transferred this case and the case of State ex rel. Vogel v. Campbell, 505 S.W.2d 54 (Mo. banc 1974), for the purpose of resolving this very issue. I believe we should and must do so in order to decide this case. Only if we decide that issue in the affirmative do we have occasion to reach the question of whether the expression by the jury was sufficient to constitute a verdict in favor of Ford.

In my judgment, our answer should be in the affirmative. As the principal opinion points out, we permit such a result in criminal cases. Rule 27.01(b), V.A.M.R. It is logical to do so in civil cases. An analogy is to be found in cases in which a jury returns a verdict against two or more defendants and then on appeal the court concludes that one defendant presents no justification for a new trial but another one does. In such a situation, this court has reversed and remanded the case with directions to the trial court to hold in abeyance the verdict as to the one defendant not entitled to a new trial while the defendant who is to receive a new trial has the case retried on the issue of liability only. Hoelzel v. Chicago, R. I. & P. R. Co., 337 Mo. 61, 85 S.W.2d 126 (Mo.1935); McCombs v. Ellsberry, 337 Mo. 491, 85 S.W.2d 135 (Mo.1935); Wolfe v. Harms, 413 S.W.2d 204 (Mo.1967).[1] There is no essential difference from what occurred in the foregoing cases and what would be the situation if the jury returns a verdict as to one defendant (whether it be for him or whether it be a verdict for plaintiff and against that defendant) but is unable to agree on a verdict as to the other defendant or defendants. As in the cases cited above, the verdict as to the one defendant is held in abeyance pending retrial as to liability of the other defendants. An appeal can be taken after there has been a determination as to the other defendants.

As Judge McMillian of the Missouri Court of Appeals, St. Louis District, remarked in his dissenting opinion in that court, "[I]t is wholly unfair to require the defendant who is found not liable by the jury to retry his cause [as to that defendant] only because the jury was unable to agree as to the other defendant." Likewise, if in this case the jury had returned a verdict for plaintiffs for $50,000.00 against Ford but had reported an inability to agree on liability as to the other defendants, it would have been unfair to require plaintiffs to retry their case as against Ford.

I do not consider that requirements for final judgment prior to appeal, for contribution by joint tort-feasors, for damages against tort-feasors to be the same, or for other such matters present unsurmountable obstacles to allowing what I propose. Holding the verdict in abeyance pending retrial as to other defendants, as was done in the Hoelzel, McCombs and Wolfe cases, takes care of these matters. If other procedural requirements are desirable or necessary, they can be provided by rule. The problems presented by not permitting verdicts as to some defendants and requiring retrial of the whole case, even though the jury has agreed on a verdict as to some defendants, far outweigh those involved in procedurally handling verdicts as to some defendants pending retrial as to others.[2]

---

1. A different result obtains if the verdict is excessive. Wolfe v. Harms, supra and cases cited therein. In such instance the case is reversed and remanded with the verdict as to liability of one defendant held in abeyance pending retrial on the issue of damages only as to that defendant and on liability and damages as to the other defendant or defendants.

2. Another example of the problems created by a contrary holding can be illustrated as follows: Plaintiff sues A and B for personal injuries. The trial court directs a verdict in favor of A and the jury then returns a verdict in favor of plaintiff against B. B appeals therefrom and plaintiff appeals with reference to the directed verdict in favor of A. On appeal, the verdict against B is up-

I would hold that a verdict in favor of (or against) Ford and a "hung jury" as to other defendants was possible and permissible. Having done so, I would then conclude, as does the principal opinion, that the jury did not return a verdict with respect to Ford in this case.

It would be appropriate to request our permanent committee on rules, with the help of the bench and bar, to give attention to this matter and to propose a procedural rule with reference thereto.

held but a new trial is directed with reference to the claim against A.

Since there can be only one final judgment in the case, there are two possible options available to the appellate court. One is to direct that the verdict against B be held in abeyance pending a retrial of the claim against defendant A on liability only. After that retrial, a single judgment could be entered against both A and B if plaintiff obtains a verdict against A. The judgment would be against B only if A is successful on the retrial.

The second alternative would be to grant a new trial as to both defendants even though the court had found that no basis existed for setting aside the original verdict against B.

If the conclusion is reached that a verdict which does not dispose of all parties is not permissible, then it necessarily follows, I submit, that the second alternative listed above would be mandatory. This is not a desirable or proper solution.